J. Tyrrell Taber, Esq. (AZ Bar No. 005204)
Christopher Post, Esq. (AZ Bar No. 028330)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 East Camelback Road, Suite 403
Phoenix, Arizona 85016
Telephone: (602) 777-7000
Facsimile: (602) 777-7708
ttaber@burgsimpson.com
cpost@burgsimpson.com
Send All Minute Entries to:
azcourt@burgsimpson.com
*Attorneys for Plaintiff Dlubak Glass Company*

Fadi K. Rasheed, Esq. (CA Bar No. 267175)
(*Pro hac vice* application pending)
Steven M. Taber, Esq. (CA Bar No. 250205)
(*Pro hac vice* application pending)
Eric J. Wu, Esq. (CA Bar No. 270228)
(*Pro hac vice* application pending)
**LEECH TISHMAN**
**FUSCALDO & LAMPL, INC.**
2041 Rosecrans Avenue, Suite 300
El Segundo, California 90245
Telephone: (424) 738-4400
Facsimile: (424) 738-5080
frasheed@leechtishman.com
staber@leechtishman.com
ewu@leechtishman.com
*Attorneys for Plaintiff Dlubak Glass Company*

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dlubak Glass Company, a Pennsylvania corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Misael Cabrera, in his individual capacity as Director of the Arizona Department of | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983** |

Environmental Quality, a non-jural entity; Bradley Baker, in his individual capacity as an employee of the Arizona Department of Environmental Quality, a non-jural entity; and Does 1 – 50,

Defendants.

COMES NOW Plaintiff DLUBAK GLASS COMPANY ("Plaintiff"), a Pennsylvania Corporation, hereby files this Complaint for Damages against Defendants MISAEL CABRERA ("CABRERA"), in his individual capacity as Director of the ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY ("ADEQ"), a non-jural entity; BRADLEY BAKER ("BAKER"), in his individual capacity as an employee of ADEQ; and DOES 1 through 50, as follows:

**PARTIES**

1.      Plaintiff is now and was at the time of the filing of this Complaint, and at all intervening times, a corporation organized under the laws of Pennsylvania, with its principal place of business in Ohio.

2.      ADEQ is now and was at the time of the filing of this Complaint, and at all intervening times, a non-jural entity situated in the State of Arizona and organized under the laws of the State of Arizona.

3.      Plaintiff is informed and believe an, based thereon, alleges that CABRERA and BAKER, along with other ADEQ inspectors and agents that are currently unknown Doe Defendants (collectively with ADEQ, "Defendants") is now, and was at the time of the filing of this Complaint and at all intervening times, a resident of Arizona. CABRERA and BAKER are sued in their individual capacities as private actors who, while employees of ADEQ, conspired with ADEQ, acting under color of state law, to deprive the Plaintiff of certain constitutional rights.

4.      The true names and capacities, whether individual, corporate, associate or otherwise of defendants named here as Does 1 – 50 are unknown to Plaintiff, who therefore

- 2 -

sue said Defendants by such fictitious name.  The Doe Defendants were responsible in some manner for the injuries and damages alleged herein.  Plaintiff is informed and believes and thereupon alleges upon information and belief that each of them is responsible, in some manner, for the injuries and damages alleged herein.

### JURISDICTION AND VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

6.      The claims alleged herein arose in the State of Arizona.  Venue for this action lies in the United States District Court for Arizona under 28 U.S.C. § 1391(b)(2).

### PLAINTIFF'S ALLEGATIONS

7.      Plaintiff is a family-owned and operated glass recycling company that has been in the glass recycling business since 1932.

8.      Since the inception of Plaintiff's business, at no point has any entity or person claimed to Plaintiff that its recycled glass was Solid Waste[1], until recently.

9.      Beginning sometime in or about 2010, ADEQ began a course of conduct to harass, bully and cause extreme economic hardship to the Plaintiff, by intentionally or recklessly misinterpreting environmental regulations and absurdly claiming that Plaintiff's recycled glass, as it pertains to Plaintiff's facility located at 19472 S Avenue 1E, Yuma, Arizona 85365 ("Facility") constitutes Solid Waste despite the fact that Plaintiff's recycling activities were exempt from being classified as a solid waste per 40 CFR § 261.39.

10.     In fact, the exempt status of the Facility precludes the ADEQ from finding that materials recycled or otherwise stored at the Facility to be Solid Waste.

11.     In the previous seventy-seven (77) years Plaintiff has been in business, Plaintiff is unaware of any other state or federal agency in the country claiming its recycled glass to be Solid Waste.

---

[1] "Solid Waste" shall hereinafter refer to solid waste as defined in 40 CFR § 261.2.

12. The material at issue here is glass, some of which was within whole cathode ray tubes ("CRTs") that were processed and recycled. While one may argue that broken or whole CRTs could be deemed Solid Waste under certain circumstances, the same cannot be said after the CRTs have been recycled and/or processed in the manner performed by Plaintiff, which reclaims and alters the physical characteristics of the materials within the former CRTs. In other words, once CRTs are recycled and/or processed by Plaintiff they are no longer CRTs. In this case, they became commercial products.

13. Therefore, Plaintiff's recycled and processed glass, whether or not it once came from CRTs, cannot be deemed as Solid Waste under the applicable laws. ADEQ ignored this fact by deeming the recycled and processed glass as Solid Waste in order to continue harassing, bullying, causing extreme economic hardship to the Plaintiff, and collecting revenue from Plaintiff.

14. The egregious behavior conducted by ADEQ against Plaintiff did not end there. ADEQ, with BAKER's assistance, initiated communications with Plaintiff's clients and potential clients, as well as other state and federal agencies, to misrepresent to them that Plaintiff's recycled and processed glass was Solid Waste for the sole purpose of extorting and intimidating Plaintiff.

15. Indeed, upon information and belief, such discriminatory and harassing actions by ADEQ and BAKER were not directed against other individuals or entities who operate on the neighboring lands or who recycle glass within the state of Arizona.

**Intentional and/or Reckless Misinterpretation of the Law by ADEQ**

16. Defendants claims of violations stem from their intentional misinterpretation of 40 CFR § 261.1(c)(8), which states "[a] material is 'accumulated speculatively' if it is accumulated before being recycled. A material is not accumulated speculatively, however, if the person accumulating it can show that the material is potentially recyclable and has a feasible means of being recycled; and that - during the calendar year (commencing on January 1) - the amount of material that is recycled, or transferred to a different site for

recycling, equals at least 75 percent by weight or volume of the amount of that material accumulated at the beginning of the period. Materials must be placed in a storage unit with a label indicating the first date that the material began to be accumulated. If placing a label on the storage unit is not practicable, the accumulation period must be documented through an inventory log or other appropriate method. In calculating the percentage of turnover, the 75 percent requirement is to be applied to each material of the same type (e.g., slags from a single smelting process) that is recycled in the same way (i.e., from which the same material is recovered or that is used in the same way)…"

17.     The ADEQ had intentionally and/or recklessly misinterpreted the term "accumulated speculatively," as used in 40 CFR § 261.1(c)(8), to claim Plaintiff's commercial product was "Solid Waste."  This misinterpretation was discovered by Plaintiff through very recent correspondences with the Arizona Attorney General's Office and the ADEQ.

18.     Despite this, the ADEQ today continues to improperly claim that Plaintiff accumulated CRT speculatively at the Facility, regards post recycled and processed glass as solid waste, and pursue frivolous "violations" against Plaintiff for claims of non-existent solid waste.

19.     Though, ADEQ knows or should know this to be incorrect through ADEQ's own alleged evidence consisting of photographs that ADEQ took at the Facility of the material at issue.

20.     Though ADEQ claims photographs it took at its 2014 inspection of the Facility ("2014 Inspection") show Solid Waste in the form of CRTs that is accumulated speculatively, they merely depict commercial product.  While Plaintiff did process and recycle non-Solid Waste CRTs lawfully at the Facility, all such CRTs were processed and recycled at the Facility well before the 2014 Inspection as shown by ADEQ's own inspection reports and photographs related to that inspection.

21.     As ADEQ knows, Plaintiff's post-processing and/or recycling activities are

exempt per 40 CFR § 261.39 and material that is post-processing/recycling that has changed its form and characteristics cannot be regulated as CRTs that "is accumulated speculatively."

22. Though, despite knowing this, ADEQ continued to issue and/or otherwise pursue violations based on false findings of Solid Waste.

**<u>Defendants' Interference With Plaintiff's Business</u>**

23. Despite Defendants knowing or should know that Plaintiff did not process or store Solid Waste outdoors at the Facility in violation of environmental laws, ADEQ publicly released such misrepresentations into the public, nonetheless. Such misrepresentations have resulted in lost business and profits by Plaintiff.

24. To make matters worse, as if the public misrepresentations made by ADEQ had not caused enough damages to Plaintiff, BAKER directly misinformed clients and potential clients seeking to buy Plaintiff's recycled and processed glass consisted of Solid Waste. Indeed, the recycled and processed glass was commercial product and not Solid Waste. Such misrepresentations resulted in lost business and profits by Plaintiff.

25. The repeated misrepresentations and improper interference with Plaintiff's business by Defendants caused loss of business and clients, especially since Defendants continuously discouraged third parties from doing business with Plaintiff.

26. As part of its scheme to further harass and discriminate against Plaintiff, the Defendants have contacted and sought cooperation from environmental agencies of other states to also wrongfully designate Plaintiff's commercial glass products as Solid Waste. This has led to numerous other investigations and violation notices from other state environmental agencies, which has also substantially deteriorated Plaintiff's ability to do business throughout the country. In order to effectuate this, Defendants intentionally misinformed and misrepresented Plaintiff's activities to other governmental agencies.

27. Mention must also be made to the fact that ADEQ continues to seek investigations of the Facility based on inapplicable laws. For example, ADEQ recently

claimed to Plaintiff that it was performing inspections on the Facility based on "[Resource Conservation and Recovery Act ("RCRA")] Focused Compliance Inspection" despite the Facility not being engaged in, or even permitted to conduct, RCRA activities.

28. Plaintiff continues to suffer damages as a result of Defendants' wrongful actions, especially since ADEQ has not ceased it wrongful inspections, violations and business interruptions.

## COUNT ONE

### Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution
### (Against All Defendants)

29. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 28 as though set forth hereto in full.

30. Defendants have been intentionally deeming recycled and processed commercial glass products as Solid Waste in efforts to harass, bully, cause extreme economic hardship, and collect revenue from Plaintiff in a discriminatory manner.

31. Upon information and belief, none of the other individuals or entities who operate on the neighboring lands or who recycle glass within the state of Arizona ("Other Third Parties") have been subjected to repeated harassment by Defendants as the Plaintiff herein has been.

32. Upon information and belief, none of the Other Third Parties have been issued violation notices for Solid Waste when the material at issue was recycled and/or processed glass in full compliance with the law.

33. That Defendants herein are treating the Plaintiff differently than the Other Third Parties.

34. That the Defendants singled Plaintiff out for enforcement proceedings which are pending and/or under investigation.

35. The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *LaTrieste Rest. v. Vill. of Port*

- 7 -

*Chester*, 188 F. 3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439 (1985)).

36.     A plaintiff can show an equal protection violation either under the selective enforcement standard, or the class-of-one standard, articulated by the United States Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

37.     The conduct of Defendants amounts to quintessential equal protection violations.  Upon information and belief, the sole reason for Plaintiff being singled out for punishment is personal animus toward Plaintiff.

38.     Defendants have engaged in impermissible selective enforcement against the Plaintiff.

39.     The actions of the Defendants towards the Plaintiff are different from others similarly situated and were done for the sole purpose of harassing, bullying, causing extreme economic hardship to the Plaintiff, and collecting revenue from Plaintiff.

40.     That the Plaintiff has been intentionally treated differently from others similarly situated.

41.     That there is no rational basis for the difference in treatment.

42.     That Defendants' actions were wholly irrational and wholly arbitrary.

43.     The Equal Protection Clause prohibits States from making distinctions that either (1) burden a fundamental right, (2) target a suspect classification, or (3) intentionally treat one differently from others similarly situated without any rational basis for the difference.  *Radvanskv v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

44.     Plaintiff has been treated disparately compared to similarly situated persons and that treatment violates a fundamental right and has no rational basis.  *Club Italia Soccer & Sports Org. Inc. v. Charter Twp. Of Shelby, Michigan*, 470 F. 3d 286, 299 (6th Cir. 2006).

45.     The Equal Protection Clause requires that individuals be treated in a manner similar to others in like circumstances.  *McCrone v. Bank One Corp.*, 107 Ohio St. 3d 272, 274 (Ohio 2005).

46.    The United States Supreme Court in Village of *Willowbrook v. Olech*, 120 S.Ct. 1073 (2000), concluded that a landowner could assert a valid equal protection claim by demonstrating that the plaintiff had become a "class of one."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

A.    That the Court award Plaintiffs punitive damages in an amount to be determined by the Court against the Defendants in actual damages, for the loss of the use of the Plaintiff's property and for the gross abuse of governmental power and misconduct which is a violation of the United States Constitution and Plaintiff's Civil Rights;

B.    Ordering the Defendants to remove violation notices;

C.    Pursuant to 42 U.S.C. § 1988 awarding Plaintiff attorney fees and costs in an amount not yet known, but estimated to be not less than $100,000.00;

D.    Finding that the Defendants have violated the Civil Rights of Plaintiff, and abused their governmental authority;

E.    Awarding Plaintiff actual damages in an amount to be determined;

F.    Enjoining the Defendants from taking any action against the Plaintiff without a determination by the Court as to guilt or innocence of any of the allegations made;

G.    Awarding Plaintiff costs; and

H.    Granting Plaintiff such other relief as to the Court may seem just and proper.

RESPECTFULLY SUBMITTED this 18th day of January 2021.

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

*/s/ Christopher Post*
J. Tyrrell Taber
Christopher Post
2390 E. Camelback Road, Suite 403
Phoenix, Arizona 85016
*Attorneys for Plaintiffs*

- 9 -

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all Counts so triable.

RESPECTFULLY SUBMITTED this 18th day of January 2021.

**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**

*/s/ Christopher Post*
J. Tyrrell Taber
Christopher Post
2390 E. Camelback Road, Suite 403
Phoenix, Arizona 85016
*Attorneys for Plaintiffs*