WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dlubak Glass Company, | No. CV-21-00095-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Misael Cabrera, et al., | |
| Defendants. | |

In this civil rights action under 42 U.S.C. § 1983, Dlubak Glass Company ("Plaintiff") alleges that Misael Cabrera, the current director of the Arizona Department of Environmental Quality ("ADEQ"), and Bradley Baker, an ADEQ employee (together, "Defendants"), violated its Fourteenth Amendment equal protection rights. Now pending before the Court is Defendants' motion to dismiss. (Doc. 18.) For the following reasons, the motion is granted and this action is terminated.

## BACKGROUND

Plaintiff operates a glass recycling facility in Yuma, Arizona. (Doc. 1 ¶¶ 1, 7, 9.) On February 4, 2014, ADEQ filed a complaint in Maricopa County Superior Court alleging that Plaintiff was violating state environmental laws by dumping glass stored within cathode ray tubes ("CRTs") at its Arizona facility. (Doc. 1 ¶ 12; Doc. 18 at 21-25.) Among other things, ADEQ (through its then-director Henry Darwin) alleged that Plaintiff was storing both processed CRT glass and broken CRTs in piles of unlabeled cardboard boxes, using an outdoor concrete slab as a CRT wash pad, and throwing away the floor and filter

solids as solid waste, which contained lead volumes more than 50 times the regulatory limit. (Doc. 18 at 21-25.)

On February 26, 2014, without admitting liability for the violations alleged by ADEQ, Plaintiff consented to the entry of judgment against it. (*Id.* at 28-38.) Among other things, the consent judgment required Plaintiff to pay a $120,000 civil penalty and precluded Plaintiff from contesting the judgment's validity or terms in any subsequent proceeding. (*Id.* at 30.) The consent judgment also provided that "[t]he State shall have the right to take enforcement action for any and all violations of environmental laws occurring after the Effective Date." (*Id.* at 33.) Additionally, the consent judgment provided that Plaintiff "releases the State of Arizona, and its agencies, departments, officials, employees, or agents from any and all claims or causes of action against them arising under or related to the allegations contained in the Complaint." (*Id.* at 34.) Finally, the consent judgment stated that the superior court retained jurisdiction "to enforc[e] the terms and conditions of th[e] Consent Judgment, to resolve disputes arising hereunder and to take any action necessary or appropriate for its construction or execution." (*Id.* at 35.)

In February 2015, Plaintiff—still without admitting liability—entered into a separate consent order with ADEQ for improperly storing, processing, and disposing of processed and unprocessed CRTs. (*Id.* at 40-52.) According to the Agency Determinations and Findings in the consent order, Plaintiff violated Arizona law by improperly storing and disposing of CRTs without meeting the solid waste conditional exclusion, which requires that broken CRTs not be accumulated speculatively.[1] (*Id.* at 41-43.) The consent order detailed various requirements, in particular subjecting Plaintiff to continued oversight by ADEQ to ensure compliance with environmental regulations. (*Id.* at 43-48.) The consent order also reserved ADEQ's right to seek civil penalties for violations occurring before the

---

[1] "A material is 'accumulated speculatively' if it is accumulated before being recycled. A material is not accumulated speculatively, however, if the person accumulating it can show that the material is potentially recyclable and has a feasible means of being recycled; and that—during the calendar year (commencing on January 1)—the amount of material that is recycled, or transferred to a different site for recycling, equals at least 75 percent by weight or volume of the amount of that material accumulated at the beginning of the period." 40 C.F.R. § 261.1(c)(8).

effective date of the order, to disapprove Plaintiff's work that failed to comply with the order, to "[t]ake enforcement action for any and all violations" of the order, and to "[t]ake enforcement action" for any violations of A.R.S. Title 49 occurring after the effective date of the order. (*Id.* at 49-50.)

On January 18, 2021, Plaintiff initiated this action. (Doc. 1.)

On May 12, 2021, Defendants filed the pending motion to dismiss. (Doc. 18.)[2]

On June 21, 2021, Plaintiff filed a response. (Doc. 21.)

On July 16, 2021, Defendants filed a reply. (Doc. 28.)

**DISCUSSION**

I.  Jurisdiction And Abstention

Plaintiff asserts a single claim in the complaint—a claim pursuant to 42 U.S.C. § 1983 against Cabrera and Baker, in their individual capacities, for violating Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1 ¶¶ 29-46.) In their motion, Defendants identify a variety of reasons why the Court lacks subject matter jurisdiction over this claim and/or should abstain from resolving it. (Doc. 18 at 5-10 ["[T]he Complaint triggers *at least four* different abstention or jurisdictional doctrines requiring dismissal under Rule 12(b)(1)."].) In general, these jurisdictional and abstention arguments are premised on Defendant's characterization of this lawsuit as challenging the substance of ADEQ's administrative actions against Plaintiff in 2014 and 2015 and/or seeking to undermine ADEQ's ability to take enforcement action related to Plaintiff. Because Plaintiff disputes this characterization of the lawsuit, the Court will begin by setting forth its understanding of Plaintiff's theory of liability.

The complaint begins with the allegation that "[b]eginning sometime in or about 2010, ADEQ began a course of conduct to harass, bully and cause extreme economic hardship to the Plaintiff, by intentionally or recklessly misinterpreting environmental regulations and absurdly claiming that Plaintiff's recycled glass, as it pertains to Plaintiff's

---

[2]  Defendants requested oral argument, but this request is denied because the issues are fully briefed and argument would not aid the decision process. *See* LRCiv 7.2(f).

[Arizona facility], constitutes Solid Waste." (Doc. 1 ¶ 9.) According to the complaint, ADEQ's characterization of Plaintiff's recycled glass as "solid waste" was inaccurate because, after CRTs were processed in Plaintiff's Arizona facility, they became "commercial products." (*Id.* ¶ 12.) The complaint further alleges that "ADEQ, with Baker's assistance, initiated communications with Plaintiff's clients and potential clients, as well as other state and federal agencies, to misrepresent to them that Plaintiff's recycled and processed glass was Solid Waste for the sole purpose of extorting and intimidating Plaintiff." (*Id.* ¶ 14.) As alleged in the complaint, these "discriminatory and harassing actions by ADEQ and Baker were not directed against other individuals or entities who operate on the neighboring lands or who recycle glass within the state of Arizona." (*Id.* ¶ 15.)

Based on these allegations, Plaintiff sues Cabrera and Baker in their "individual capacities as private actors who, while employees of ADEQ, . . . deprive[d] Plaintiff of certain constitutional rights." (*Id.* ¶ 3.) Specifically, Cabrera and Baker are accused of violating Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment by "intentionally deeming recycled and processed commercial glass products as Solid Waste in efforts to harass, bully, cause extreme economic hardship, and collect revenue from Plaintiff in a discriminatory manner" (*id.* ¶ 30); not subjecting "other individuals or entities who operate on the neighboring lands or who recycle glass within the state of Arizona" to this "repeated harassment" or to "violation notices for Solid Waste" (*id.* ¶¶ 31-32); "singl[ing] Plaintiff out" for "enforcement proceedings which are pending and/or under investigation" (*id.* ¶ 34); imposing unspecified "punishment" solely because of an unspecified "personal animus toward Plaintiff" (*id.* ¶ 37); "engag[ing] in impermissible selective enforcement" against Plaintiff (*id.* ¶ 38); and intentionally treating Plaintiff differently "from others similarly situated" (*id.* ¶ 40).

In their motion to dismiss, Defendants argue that Plaintiff is "urging a claim for a constitutional violation arising out of the 2014-2015 enforcement actions." (Doc. 18 at 6.) Based on this understanding of Plaintiff's claim, Defendants spend the bulk of their motion

detailing the many reasons why this Court would lack subject matter jurisdiction over (or should abstain from resolving) such a claim. (*See, e.g.*, *id.* at 9 ["[T]here is no means of separating Dlubak's constitutional challenge here from the administrative actions."]; *id.* at 11 ["[I]t appears that Dlubak's claims arise from the actions of Director Cabrera and Bradley Baker in instituting enforcement proceedings against Plaintiff for violation of federal and state environmental laws and regulations."]).

In response, Plaintiff accuses Defendants of "mischaracteriz[ing]" the complaint and "seek[ing] to reinvent this case as a challenge to the substance of ADEQ's administrative actions," when in fact the complaint "do[es] not rely on any administrative proceeding or depend on their outcome" and instead is "based on Defendants' discriminatory actions that they have committed and are still committing outside the administrative actions." (Doc. 21 at 2.) Time and again, Plaintiff asserts that the § 1983 claim is distinct from ADEQ's administrative actions. (*See, e.g.*, *id.* at 10 ["Dlubak does not seek to relitigate or even challenge the alleged violations raised in the 2014 Complaint. . . . Defendants' arguments focus on Dlubak's conduct related to the 2014 Complaint and the administrative action, whereas the instant Complaint concerns Defendants' unlawful conduct related to civil right[s] violations."]; *id.* at 15 ["[Defendants] seek[] to misconstrue this case as a challenge to the substance of ADEQ's administration [sic] actions . . . [but] Dlubak's claims are based on Defendants' discriminatory actions that they have committed and are still committing outside the administrative actions."].)

In reply, Defendants accuse Plaintiff of "attempt[ing] to confuse the Court about the nature and substance of" the complaint and argue that Plaintiff's response is beset by various contradictions, such as taking the "ardent position that the administrative proceedings have nothing to do with the Complaint" but then "pivoting to the suggestion that the administrative proceedings are central to what it sometimes characterizes as its 'selective enforcement' claim." (Doc. 28 at 2, 4.)

In many ways, Defendants' characterization of Plaintiff's complaint is more logical and comprehensible than Plaintiff's characterization. Although Plaintiff repeatedly asserts

in conclusory fashion that it is not seeking to challenge the substance of ADEA's administrative actions, Plaintiff never attempts to explain how a claim for "impermissible selective enforcement" against the representatives of an administrative agency (Doc. 1 ¶ 38), or a claim that the agency representatives "singled Plaintiff out for enforcement proceedings" (*id.* ¶ 34), or a claim that the agency representatives improperly "issued violation notices for Solid Waste" to Plaintiff (*id.* ¶ 32), could somehow be viewed as distinct from a challenge to the substance of the underlying administrative actions. Nor does Plaintiff seek to explain how one of the categories of relief sought in the complaint—"Ordering Defendants to remove violation notices" (*id.* at 9)—could be viewed as distinct from a challenge to the substance of the underlying administrative actions.

Nevertheless, Plaintiff is the master of its complaint and denies that it is seeking to raise a challenge to ADEQ's (and Defendants') administrative actions. Accordingly, the Court will accept this characterization of Plaintiff's complaint for purposes of the motion-to-dismiss analysis. This approach makes it unnecessary to delve into the complicated jurisdictional and abstention doctrines raised by Defendants, which include the *Rooker-Feldman* doctrine,[3] the *Younger* abstention doctrine,[4] and the *Burford* abstention doctrine,[5] because Defendants' arguments related to those doctrines are all premised on Defendants' expansive view of Plaintiff's theory of liability. Instead, the Court will turn to Defendants' other dismissal arguments.

---

[3] *See, e.g.*, *Lance v. Dennis*, 546 U.S. 459, 463-64 (2006) (explaining that the *Rooker-Feldman* doctrine prohibits federal courts from exercising jurisdiction over a lawsuit that is a de facto appeal of a state court judgment).

[4] *See., e.g.*, *Middlesex Cnty. Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (explaining that *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances").

[5] *See, e.g.*, *New Orleans Public Svc., Inc. v. Council of Cty. of New Orleans*, 491 U.S. 350, 361 (1989) (explaining that under the *Burford* abstention doctrine, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern'").

1  II.     Failure To State A Claim/Qualified Immunity

One of the grounds on which Defendants seek dismissal of the complaint is that Plaintiff has failed to allege facts that would support individual-capacity claims against Cabrera and Baker.  (Doc. 18 at 16-17.)  For related reasons, Defendants argue they are entitled to qualified immunity.  (*Id.* at 12-13.)  As explained below, the Court agrees that dismissal is warranted on these bases.

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *Id.* at 1444-45 (citation omitted).  However, the Court need not accept legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 679-680.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 679.  The Court also may dismiss due to "a lack of a cognizable theory."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).  Critically, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Put another way, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Id.* at 677.

These principles compel the dismissal of Plaintiff's § 1983 claim as it relates to Cabrera.  The sole allegation in the complaint pertaining specifically to Cabrera is an assertion, in the introductory section of the complaint identifying the parties, that Cabrera is a "private actor[] who, while [an] employee[] of ADEQ, conspired with ADEQ [and Baker], acting under color of law, to deprive the Plaintiff of certain constitutional rights."

(Doc. 1 ¶ 3.) That is it. None of the remaining paragraphs of the complaint identify Cabrera by name, much less allege that Cabrera individually engaged in any of the challenged conduct. Given this backdrop, the complaint does not come close to alleging that Cabrera may be held individually responsible for violating Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. *Cf. Anderson v. City of Chicago*, 90 F. Supp. 2d 926, 929 (N.D. Ill. 1999) ("It is clear Anderson cannot maintain a cause of action against defendant Carey in her individual capacity because he does not provide a single allegation about her in the body of his complaint . . . . To state a cause of action against a person in his or her individual capacity, there must be an allegation of direct responsibility for the alleged constitutional deprivation. Because Anderson makes no allegations about Carey, we dismiss the complaint against her.") (internal citations omitted).

Notably, in response to Defendants' motion, Plaintiff does not suggest that Cabrera had any personal involvement in the challenged conduct in this case. Instead, Plaintiff clarifies that "Cabrera was named given he is the Director of ADEQ and it is required for him to be named in order for ADEQ to be sued." (Doc. 21 at 17.) But this clarification hurts rather than helps Plaintiff's case—Cabrera has been sued in his individual capacity (Doc. 1 ¶ 3), not in his official capacity as ADEQ's director. Additionally, to the extent Plaintiff wished to pursue a claim against ADEQ via an official-capacity claim against Cabrera, such a claim would be barred for other reasons. *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) ("Under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

As for Baker, the one specific allegation in the complaint is that "ADEQ, with Baker's assistance, initiated communications with Plaintiff's clients and potential clients, as well as other state and federal agencies, to misrepresent to them that Plaintiff's recycled and processed glass was Solid Waste for the sole purpose of extorting and intimidating

Plaintiff." (Doc. 1 ¶ 14.) Although Plaintiff argues that the complaint identifies "many [other] actions taken by Mr. Baker" (Doc. 21 at 12), the paragraphs of the complaint cited by Plaintiff describe conduct that was generically committed by "ADEQ," not conduct that was specifically committed by Baker.[6] Similarly, although Plaintiff asserts that "[Baker's] discriminatory actions are listed throughout the entire Count One *in conjunction with* ADEQ's actions" (Doc. 21 at 17), the Court is left to guess at which actions (if any) Baker personally undertook. Thus, the only specific, non-conclusory allegation in the complaint directed toward Baker is the allegation in paragraph 14 that Baker "initiated communications with Plaintiff's clients and potential clients, as well as other state and federal agencies, to misrepresent to them that Plaintiff's recycled and processed glass was Solid Waste for the sole purpose of extorting and intimidating Plaintiff."

This allegation falls far short of stating a plausible claim against Baker under the Equal Protection Clause of the Fourteenth Amendment. As an initial matter, to the extent Plaintiff seeks monetary damages based on this claim, Baker correctly argues (Doc. 18 at 12-13) that he is entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). As for the inquiry under the second prong, a government official's conduct violates "clearly established" law when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 741 (cleaned up). Although there need not be a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In other words, the case law must "have been earlier

---

[6] Specifically, Plaintiff points to the allegations that "ADEQ . . . continue[d] [to] harass[], bully[], and caus[e] extreme economic hardship to Plaintiff" (Doc. 1 ¶ 13), that "ADEQ and Baker" were engaging in "discriminatory and harassing actions" not directed against other individuals or entities (*id.* ¶ 15), that "ADEQ . . . misinterpreted the term 'accumulated speculatively' . . . to claim Plaintiff's commercial product was 'Solid Waste'" (*id.* ¶ 17), that "ADEQ . . . pursue[d] violations based on false findings of Solid Waste" (*id.* ¶ 22), and that "ADEQ publicly released such misrepresentations to the public" (*id.* ¶ 23).

developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. City of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). *See also Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("This Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.") (internal quotation marks omitted). Additionally, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). "Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). *See also Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991) ("The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.").[7]

Baker is entitled to dismissal of any § 1983 claim for monetary damages under the second prong of the qualified-immunity test because Plaintiff has not identified any clearly established law supporting its claim. Here is the totality of Plaintiff's substantive response on the issue of qualified immunity:

> [A]s the U.S. Supreme Court pointed out in *Gomez v. Toledo*, 446 U.S. 305, 308 (1980), 42 U.S.C. § 1983–the statute under which Dlubak has brought this action—"provides a cause of action for the deprivation of any rights, privileges, or immunities *secured by the Constitution* and laws by any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Id.* (Internal quotes omitted, emphasis added). The

---

[7] Although *LSO* and *Romero* place the burden on the plaintiff, other Ninth Circuit opinions hold that "[q]ualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017). These opinions are difficult to reconcile. *See generally Slater v. Deasey*, 943 F.3d 898, 909 (9th Cir. 2019) (Collins, J., dissenting from denial of rehearing en banc) ("The panel committed . . . error in suggesting that Defendants bear the burden of proof on the disputed qualified-immunity issues presented in this appeal. . . . [T]he applicable—and well-settled—rule [in the Ninth Circuit] is that the plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.") (cleaned up).

> Defendants do not claim that Dlubak do not allege sufficient facts to make out a § 1983 claim. Rather, they claim that there was no "clearly established federal right," which there is. Moreover, "class of one" Equal Protection claim, which Dlubak alleges in its Complaint, was "clearly established" when all of the actions alleged in the Complaint took place. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

(Doc. 21 at 13.) This argument betrays a misunderstanding of how qualified immunity works and the level of specificity that is required under the second prong of the qualified-immunity analysis. Plaintiff appears to be under the misimpression that, because the Supreme Court has generally recognized the validity of "class of one" claims under the Equal Protection Clause and Plaintiff is seeking to aset a "class of one" claim in this case, this alone is enough to overcome a qualified-immunity defense. Not so. *See, e.g.*, *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'") (cleaned up). Because Plaintiff has made no effort to identify a previous case that would have provided notice to Baker that the conduct at issue in this case—as alleged in paragraph 14, an employee of a state regulatory agency making misrepresentations about a regulated entity to that entity's clients and potential clients, as well as to other state and federal agencies—violates the Equal Protection Clause of the Fourteenth Amendment, Baker is entitled to qualified immunity as to Plaintiff's § 1983 claim to the extent Plaintiff is seeking monetary damages.

Finally, although Plaintiff correctly points out (Doc. 21 at 13) that "[q]ualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief," *Hydrick v. Hunter*, 669 F.3d 937, 939-40 (9th Cir. 2012), Plaintiff's claim against Baker would fail even if not barred by the second prong of the qualified-immunity test. As a threshold matter, the only two

forms of injunctive relief sought in the complaint are "[o]rdering Defendants to remove violation notices" and "[e]njoining the Defendants from taking any action against the Plaintiff without a determination by the Court as to the guilt or innocence of any of the allegations made." (Doc. 1 at 9.) The former request is untethered to Baker, as the sole Baker-specific allegation in the complaint relates to sending communications to clients and other regulatory agencies—there is no allegation that Baker is involved in issuing or rescinding violation notices. As for the latter request, Defendants identify various reasons why it is "unsupported by law" and "would be an unheard of use of this Court's equitable powers" (Doc. 18 at 17) and Plaintiff does not meaningfully respond (Doc. 21 at 18-19). Additionally, the Court notes that, although the complaint alleges that Baker "initiated" certain communications to which Plaintiff objects (Doc. 1 ¶ 14), there is no allegation as to when these communications occurred or, critically, whether they continue to occur. And where "plaintiffs seek declaratory and injunctive relief . . . there is a further requirement that they show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). *See also Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) ("Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects.").

At any rate, Plaintiff's request for injunctive relief against Baker also fails because the underlying claim on which it is based, the "class of one" equal protection claim against Baker, is subject to dismissal under Rule 12(b)(6). To state a claim under a "class of one" theory of equal protection, a plaintiff must allege facts to show that: (1) the defendant acted intentionally, (2) the defendant treated the plaintiff differently than others similarly situated, and (3) there was no rational basis for the differential treatment. *Gerhart v. Lake Cnty., Montana*, 637 F.3d 1013, 1022 (9th Cir. 2011). *See also North Pacifica, LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others

similarly situated. A class of one plaintiff must show that the discriminatory treatment was intentionally directed just at him, as opposed . . . to being an accident or a random act.") (citations and internal quotation marks omitted). Here, although the complaint alleges in conclusory fashion that Defendants harbored "personal animus toward Plaintiff" (Doc. 1 ¶ 37), it fails to allege any facts in support of this label—there is no explanation for why ADEQ, or Baker personally, developed the alleged animus. Similarly, although the complaint alleges in conclusory fashion that "Plaintiff has been intentionally treated different from others similarly situated" (*id.* ¶ 40), nowhere does the complaint identify a similarly situated company, let alone provide any facts in support of the conclusion that the unspecified other company was similarly situated to Plaintiff. It is not enough to allege, as the complaint does here, that "upon information and belief, such discriminatory and harassing actions by ADEQ and Baker were not directed against other individuals or entities who operate on the neighboring lands or who recycle glass within the state of Arizona." (*Id.*¶ 15.) Much more specificity is required. *See, e.g.*, *James v. Granger*, 2014 WL 580897, *5 (E.D. Cal. 2014) ("Plaintiff has the burden to demonstrate that he was singled out for disparate treatment . . . [and] must allege facts to show that others similarly situated were, in fact, treated differently. Plaintiff's FAC alleges nothing about the alleged 'normal practice' other than his knowledge of its existence."); *Scocca v. Smith*, 2012 WL 2375203, *5-6 (N.D. Cal. 2012) ("Where a plaintiff is making a class-of-one claim, . . . there is a higher premium for a plaintiff to identify how he or she is similarly situated to others. . . . Several courts have indicated that there needs to be specificity in a class-of-one case. . . . [C]ursory allegations on being similarly situated are especially problematic where, *e.g.*, 'inherently subjective and individualized enforcement of health and safety regulations' are at issue . . . . Accordingly, Mr. Scocca has failed to state a plausible equal protection claim because he has simply stated in conclusory terms that he is similarly situated with the seventy persons who have been licensed.") (citations omitted).[8]

---

[8] Defendants raise several additional bases for dismissal, including absolute immunity, claim preclusion, untimeliness, and express waiver. (Doc. 18 at 10-17.) Because the Court is dismissing the complaint on other grounds, it need not reach these

III. <u>Leave To Amend</u>

Plaintiff identifies two issues as to which it should be granted leave to amend in the event of dismissal: *first*, Plaintiff argues that, to the extent the Court is inclined to dismiss on statute-of-limitations grounds, "Plaintiff should be granted leave to amend its claims to allege" facts that might support a claim of equitable estoppel (Doc. 21 at 14); and *second*, Plaintiff argues that "[e]ven if Messrs. Cabrera and Baker were improperly named in their individual capacities, then [Plaintiff] should be permitted the opportunity to amend its Complaint to name them in their official capacities as a Director and employee of the ADEQ" (*id.* at 18).

Plaintiff's amendment request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, denial of Plaintiff's leave request is appropriate because amendment would be futile. The Court has not ordered dismissal on statute-of-limitations grounds, so Plaintiff's first proffered amendment is inapplicable. As for Plaintiff's other proffered amendment (switching the allegations so Cabrera and Baker would be sued in their official capacities), this change would not cure the many additional grounds for dismissal identified in this order and would, at any rate, be futile for the reasons discussed above. *Mitchell*, 861 F.2d at 201; *Will*, 491 U.S. at 71.

…
…
…
…

---

arguments.

- 14 -

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 18) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 19th day of November, 2021.

Dominic W. Lanza
United States District Judge